IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOEL GOLD,

    Plaintiff

v.      CIVIL NO. JKB-17-0483

SCOTT GOLD, *et al.*,

    Defendants

## **MEMORANDUM**

Plaintiff Joel Gold brought this action against Defendants Scott Gold and Doris Gold in state court in Maryland on December 21, 2016. (*See* Notice of Removal, ECF No. 1.) The case was removed to this Court, and since then the Court has twice dismissed the case for lack of personal jurisdiction on motions from the Defendants. (*See* Mems., ECF Nos. 20, 50.) Before the Court is the third round of such motions: a motion to dismiss for lack of personal jurisdiction by Doris (ECF No. 65) and the same by Scott (ECF No. 68). These motions are fully briefed, ripe and ready for review. There is no need to hold a hearing to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the Court will transfer the case to the Southern District of Florida.

**I.**     *Background[1]*

Plaintiff, a resident of New Jersey, obtained a money judgment against his estranged son Scott Gold, a Florida resident, in New Jersey State Court on December 4, 2015. (Second Am.

---

[1] The facts recited here are those alleged by Plaintiff. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) ("In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

Compl. ¶¶ 1, 3-4, ECF No. 59.) "Shortly after" Plaintiff obtained this money judgment, Scott sold a marine vessel, in order to hide assets from his father. (*Id.* ¶ 8.) Scott had purchased the vessel, the "Rehoboth Star," the previous year, on June 6, 2014. (*Id.* ¶ 6.) The vessel was "eventually" kept in West Ocean City, Maryland. (*Id.*) It was there when the vessel was sold, and the sale took place in Maryland. (*Id.* ¶ 8.) Plaintiff does not allege that Scott has ever set foot in Maryland.

Nor does Plaintiff allege that his ex-wife, Defendant Doris Gold has been to Maryland. Plaintiff does allege, however, "upon information and belief," that Doris knew Scott was going to sell the Rehoboth Star in order to hide assets from her ex-husband, and knew Scott was going to sell the vessel in Maryland. (Second Am. Compl. ¶ 13.) She received a portion of the proceeds from the sale, in the form of eight checks under $10,000, totaling $70,000 in all. (*Id.* ¶ 11.) The checks she received were "issued in Maryland from a Maryland bank, and sent from Maryland." (*Id.*; *see* Checks, Second Am. Compl. Ex. B, ECF No. 59-2.)

On December 21, 2016, Plaintiff filed a complaint against Doris and Scott in Maryland state court, asserting two state law causes of action: violation of Maryland's Fraudulent Conveyance statute, and civil conspiracy. (*See* Compl., ECF No. 2.) Doris removed the case to this Court on the basis of diversity of citizenship on February 17, 2017, and then moved to dismiss for lack of personal jurisdiction. (*See* Notice of Removal; Doris Gold First Mot. Dismiss, ECF No. 10.)

On May 15, 2017, the Court granted Doris's motion. (*See* First Mem., ECF No. 20.) The Court held that Plaintiff had not alleged sufficient facts to establish personal jurisdiction over Doris under a theory of conspiracy jurisdiction. Plaintiff had not alleged that Doris had knowledge, prior to Scott selling the vessel, of the scheme to hide assets and, crucially, that the

scheme would involve the State of Maryland. Plaintiff amended his complaint (*see* First Am. Compl., ECF No. 28), and in response Doris again moved to dismiss for lack of personal jurisdiction (*see* ECF No. 32). Scott moved to dismiss on the same grounds. (*See* ECF No. 39.)

On September 28, 2017, the Court granted both Defendants' motions to dismiss. (*See* Second Mem., ECF No. 50.) Plaintiff had failed to allege, or clearly identify, a provision of the Maryland long-arm statute that would authorize the exercise of personal jurisdiction over either Defendant, and so the case was dismissed for lack of personal jurisdiction. Plaintiff did not, at first, amend his complaint to cure this deficiency. Instead, he appealed to the United State Court of Appeals for the Fourth Circuit, who found that "[b]ecause [Plaintiff] may be able to remedy the deficiency identified by the district court by filing an amended complaint . . . the order [Plaintiff] seeks to appeal is neither a final order nor an appealable interlocutory or collateral order." *Gold v. Gold*, No. 17-2270, 2018 WL 2046107, at *1 (4th Cir. Jan 18, 2018). The court accordingly "dismiss[ed] the appeal for lack of jurisdiction and remand[ed] the case to the district court with instructions to allow [Plaintiff] to amend his complaint." *Id.*

The Court followed those instructions, and granted Plaintiff leave to amend his complaint a second time. (*See* Order Reopening Case, ECF No. 58.) Plaintiff filed his second amended complaint on March 16, 2018. Both Doris and Scott have again moved to dismiss this complaint for lack of personal jurisdiction. (*See* Doris Gold Second Mot. Dismiss, ECF No. 65; Scott Gold Second Mot. Dismiss, ECF No. 68.) Plaintiff responded in opposition to both motions (ECF No. 71) and Doris replied on June 4, 2018 (ECF No. 74). The time for Scott to reply has passed, and therefore both Defendants' motions are ripe for review, and the Court will turn to their disposition.

## II. *Standard*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is a test of the Court's personal jurisdiction over the defendant. "[W]hen, as here, the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation marks omitted).

## III. *Analysis*

The Court will first discuss whether it may exercise personal jurisdiction over Scott and Doris and then why, considering the closeness of that question, it will transfer the case to the Southern District of Florida, where jurisdiction over the Defendants is more clearly proper.

### a. *Personal Jurisdiction*

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Maryland., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Under Maryland law, for a court to exercise jurisdiction over a nonresident defendant, the "exercise of jurisdiction must be authorized under the state's long-arm statute [and] the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*

#### i. *Maryland long-arm statute*

The Court "must accept as binding the interpretation of Maryland's long-arm statute rendered by the Maryland Court of Appeals." *Carefirst*, 334 F.3d at 396. "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal

4

jurisdiction set by the due process clause of the Constitution. Thus, [the] statutory inquiry merges with [the] constitutional inquiry." *Id.* at 396-97 (internal citations omitted). Still, "the plaintiff must identify a specific provision [of the long-arm statute] authorizing personal jurisdiction." *Aphena Pharma Solutions-Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012); *see Mackey v. Compass Marketing, Inc.*, 892 A.2d 479, 493 n. 6 (Md. 2006) ("We did not, of course, mean . . . that it is now permissible to simply dispense with analysis under the long-arm statute."); *LWRC Int'l, LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 335 (D. Md. 2011) ("This Court has explained that this broad reach does not suggest that analysis under the long-arm statute is irrelevant."); *Lewis v. Willough at Naples*, Civ. No. JKB-18-0261, ___ F. Supp. 3d ___, 2018 WL 2321123, at *2 (D. Md. May 21, 2018) ("[T]he 'merges' language does *not* eliminate the need to satisfy the requirements of the long-arm statute first."); *Gibbs v. Cty. of Delaware*, Civ. No. RWT 15-1012, 2015 WL 6150939, at *2 (D. Md. Oct. 15, 2015) ("[A] plaintiff is required to identify a specific provision within the Maryland long-arm statute which authorizes personal jurisdiction."). Plaintiff "respectfully submits" that the specific provision of the long-arm statute that authorized jurisdiction over the Defendants was "always clearly inferable from [his] pleadings and arguments." (Opp'n 25, ECF No. 71-1.) It was not. In fact, it remains unclear.

In Plaintiff's second amended complaint he alleges that jurisdiction is proper over the Defendants under any one of three provisions of Maryland's long-arm statute: Sections 6-103(a), (b)(1), and (b)(2) of the Maryland Code, Annotated, Courts & Judicial Proceedings Article. Section 6-103(a) does not authorize jurisdiction over a nonresident defendant.[2] Section 6-103(b)(1) authorizes jurisdiction over a nonresident defendant who, "directly or by an agent . .

---

[2] It reads: "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

. [t]ransacts any business . . . in the State." Even though this provision appears to be broad—"[t]ransacts *any* business"—Maryland courts "have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Aphena*, 912 F. Supp. 2d at 315. Plaintiff does not allege that Scott engaged in significant negotiations in Maryland, regularly sells boats in Maryland, or advertised the sale of this (or any) vessel in Maryland (or at all). Section 6-103(b)(2) authorizes jurisdiction over nonresident defendants who contract to "supply goods, food, [or] services, or manufacture[] products in the State." Scott, according to Plaintiff, has sold a single item in the state. Plaintiff did not allege that Scott engaged in contract negotiations in Maryland, or contracted to sell "goods" (plural). *Cf. Coating Eng'rs (Private) Ltd. v. Elec. Motor Repair Co.*, 826 F. Supp. 147, 149 (D. Md. 1993) ("[T]elephone conversations with a party in Maryland and listing in a publication with circulation in Maryland do not constitute transacting business or contracting to supply goods within the meaning of the statute.").

Plaintiff argues in his opposition that another section authorizes jurisdiction, Section 6-103(b)(3), which authorizes jurisdiction when the nonresident defendant "[c]auses tortious injury in the State by an act or omission in the State." But, like Sections (b)(1) and (b)(3), this provision too is not a tight fit for the conduct alleged. This section authorizes jurisdiction when both the tortious act *and* the tortious harm occurred in Maryland. *See Aphena*, 912 F. Supp. 2d at 316-17 (comparing Sections 6-103(b)(3) and 6-103(b)(4)). It is not "clearly inferable" from Plaintiff's second amended complaint that Plaintiff suffered harm in Maryland. Defendant may have (allegedly) caused the boat to be sold in Maryland, but Plaintiff's harm does not appear to be the loss of a boat *per se*, but rather the inability to recover on his judgment, a harm that Plaintiff arguably suffered at his home, in New Jersey. *Cf. Consulting Eng'rs Corp. v.*

6

*Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009) (nonresident defendant breached contract that was negotiated in forum state, but the harm was caused in India, and the case was dismissed for lack of personal jurisdiction).

Despite the differences between Plaintiff's second amended complaint and argument in opposition, and the close question as to which long-arm provisions authorize jurisdiction over Defendants (if any), the Court will assume, without deciding, that Section 6-103(b)(3) authorizes jurisdiction here. Plaintiff seems intent on brining this suit in Maryland, and therefore, in the interest of judicial economy, the Court will move past its analysis of the Maryland long-arm statute and onto the question of whether jurisdiction over the persons of the Defendants would comport with due process.

### ii. *Due Process*

Defendants—residents of Florida who, as far as Plaintiff's second amended complaint is concerned, have never set foot in Maryland—are not subject to general jurisdiction in Maryland. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (discussing general jurisdiction). The Court will therefore consider whether the assertion of specific jurisdiction would be consistent with due process in this case. Under that inquiry, the Court will consider "(1) the extent to which the defendant has purposefully availed [him]self of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 397.

The extent to which Plaintiff purposefully availed himself of the privilege of conducting activities in the State is low. According to Plaintiff, Scott made one transaction in Maryland: he sold a marine vessel. There is no allegation that Defendant regularly did business in Maryland,

7

sold the vessel in Maryland in order to get a better price (or, as the case may be, a worse one), sold the vessel in Maryland because he believed the fraudulent conveyance laws were more lenient, or for any reason other than that the Rehoboth Star happened to be docked in Ocean City when Plaintiff learned of the judgment. Scott's contact with Maryland appears more fortuitous than purposeful. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) ("[T]he defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way.")

Plaintiff's claims did, however, arise, at least in part, out of the activities that occurred in the State of Maryland. The parties under- and overstate the importance of this fact. Scott ignores the relationship between the act and this case, arguing only that a single, isolated transaction is not enough to establish personal jurisdiction over him. That may be true *if*, unlike here, such transaction was unrelated to the cause of action. Plaintiff misconstrues the importance of this fact in the other direction. To Plaintiff, that Scott's Maryland-related transaction serves in part as the basis for this lawsuit is the alpha and omega of the Court's personal jurisdiction analysis. Plaintiff seems to think that because the transaction is related to an element of the lawsuit there *must* be personal jurisdiction over Scott. Not so. "The contacts related to the cause of action must create a 'substantial connection' with the forum state," even if "this connection need not be as extensive as is necessary for general jurisdiction." *ESAB Grp.,* 126 F.3d at 625. *Carefirst* makes clear that the relationship between the contact and the claim is but one facet of a tripartite inquiry that the Court must make. The extent to which Scott availed himself of the forum still matters, as does the question of whether the exercise of personal jurisdiction would be constitutionally reasonable.

And it is on that third prong—the overall constitutional reasonableness—that Plaintiff's case is weakest. Under this prong the Court will consider a variety of relevant factors including "the forum State's interest in adjudicating the dispute . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotation marks omitted). This overall reasonableness review takes into account the interests of the parties as well, namely "the plaintiff's interest in obtaining convenient and effective relief," and "the burden on the defendant." *Id.* (internal quotation marks omitted). Each of these factors weighs against exercising personal jurisdiction over the Defendants here.

From the perspective of the forum state's interest, or the interests of the interstate judicial system and the "several States," it makes little sense to litigate this case in Maryland. A central consideration in weighing the forum state's interest is the residency of the parties, for "[t]here can be no doubt that the state has a strong interest in rectifying wrongs allegedly committed within its territory against its citizens." *Yates v. Motivation Indus. Equip. Ltd.*, 38 F. App'x 174, 182 (4th Cir. 2002) (Wilkinson, J., dissenting); *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ("It cannot be denied that California has a manifest interest in providing effective means of redress *for its residents* when their insurers refuse to pay claims." (emphasis added)); *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 416 (4th Cir. 2002); *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 321 (D. Md. 1983). Even if the wrong was committed within the territory of the forum state, if it was committed against a nonresident, the forum state's interest in adjudicating the dispute diminishes. *See Federal Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 661 (4th Cir. 1989). *Federal Insurance Co.*, for example, was an action by a

subrogated insurer to recover for damage caused by an alleged equipment malfunction on a vessel. *Id.* at 657. The "incident took place while the vessel was docked in Charleston, South Carolina," and the vessel was damaged in South Carolina. *Id.* Still, because the plaintiff "and its insured [were] not residents of South Carolina . . . the forum's interests in the dispute [were] diminished," and the court affirmed dismissal for want of personal jurisdiction over the defendants. *Id.* at 661.

The Court cannot see how Maryland would have *any* interest in providing a forum for a New Jersey resident to sue two Florida residents. Even if the Court assumed that the wrong was committed entirely in Maryland—*i.e.*, even if the Court assumed that the plan to hide assets from Plaintiff was hatched in Maryland and carried out entirely in Maryland (facts beyond those alleged in Plaintiff's second amended complaint)—the State would still have a diminished interest in adjudicating this dispute. To reiterate, Plaintiff's allegations suggest that Scott's connection with Maryland was entirely opportunistic. As far as Plaintiff alleges, it just happened that a Floridian's boat was in Maryland when the Floridian (allegedly) needed to hide assets from his father (in New Jersey). That the "incident took place while the vessel was docked in [Maryland]", *see Fed. Ins. Co.*, 886 F.2d at 661, does not alter this fundamental reality: no Maryland residents were harmed in the making of this case, and Maryland's interest in it is at, or very close, to zero.

The same can be said for the interests of the interstate judicial system, or the interests of the States in "furthering fundamental social policies": there are few, if any. As the Court will discuss shortly, it is no more convenient to litigate this case in Maryland than in the home state of the Defendants (it may be less so), and there are no behind-the-scenes policy prerogatives to consider. *Cf., e.g.*, *Kulko v. Superior Court of California in and for City and Cty. of San*

*Francisco*, 436 U.S. 84, 93 (1978) ("[T]o find personal jurisdiction in a State on this basis . . . would discourage parents from entering into reasonable visitation agreements."). The Court can see no reason, and there are none advanced by Plaintiff, that Maryland or her sister states would wish to see this case litigated in Maryland.

That leaves the interests of the parties. The residency of the plaintiff matters here as well. "[A]s a nonresident, [a plaintiff]'s interest in obtaining relief in [the forum state] is reduced." *Young v. F.D.I.C.*, 103 F.3d 1180, 1192 (4th Cir. 1997). In *Federal Insurance Co.*, the court noted that because the plaintiff/appellant and its insured were not residents of the forum state, the "*appellant's* as well as the forum's interest in the dispute [were] diminished." 886 F.2d at 661 (emphasis added). The Court should also consider where the "underlying facts of this lawsuit took place," *Vanderhye v. E. Valley Fiduciary Servs., Inc.*, Case No. 1:15-cv-490, 2015 WL 13036680, at *6 (E.D. Va. June 11, 2015), as well as whether Plaintiff's interest in obtaining convenient and effective relief "is not adequately protected by the plaintiff's power to choose the forum," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Finally, the Court is ever-mindful of the burden on the Defendants, something that is "always a primary concern." *Id.*

The interests of the parties do not make it constitutionally reasonable to litigate this case in Maryland. Plaintiff, as a New Jersey resident, has little interest if any in availing himself of the courts of Maryland. It would seem that the "underlying facts of this lawsuit" took place as much in Florida (or wherever the alleged agreement between the Defendants was made and wherever Scott negotiated the sale from) as much as they took place in Maryland. Further, it is not as though there are no other forums in the United States where Plaintiff could bring this claim; both Defendants are residents of Florida. *Cf. Yates*, 38 F. App'x at 182 (Wilkinson, J.,

11

dissenting) (noting the possible unfairness of when a plaintiff cannot sue a defendant in any jurisdiction in the United States). And, as residents of Florida they would face a sizeable burden defending this case in Maryland. The Court will give some solicitude to a plaintiff's chosen forum, but his "convenience alone cannot justify the heavy burden on defendants which the assertion of personal jurisdiction would impose." *Federal Ins. Co.*, 886 F.2d at 661.

Plaintiff states that "it would plainly be 'constitutionally reasonable'" for the Court to exercise personal jurisdiction over Scott. (Opp'n at 22.) That is an overstatement. Despite the fact that this case arises in part because a vessel was allegedly sold in in Maryland, other considerations of constitutional reasonableness point strongly in the direction of dismissal.

### iii. *Doris's Motion*

The Court will briefly note that if the case for jurisdiction over Scott is thin, the case for jurisdiction over Doris is near diaphanous. Under the conspiracy theory of jurisdiction, "analogous to the agency concept of jurisdiction," a nonresident defendant who lacks "sufficient, personal, 'minimum contacts,' with the forum state . . . may be subject to suit in the forum jurisdiction *based upon a co-conspirator's contacts with the forum state.*" *Mackey*, 892 A.2d at 484 (emphasis added). So, if it would violate due process to haul Scott, the alleged co-conspirator, to court in Maryland, it would violate due process to drag Doris along as well. And that leaves aside Plaintiff's continuing confusion between allegations going to Doris's *ex post* knowledge of the scheme and her *ex ante* knowledge.[3]

---

[3] Plaintiff, as the Court noted in its earlier opinion, must allege (plausibly) that Doris not only knew of the scheme prior to its occurrence, but that she knew it was likely to occur, in some significant part, in Maryland. Other than Plaintiff's "information and belief" that Doris knew this, he continues to rely on various allegations regarding Doris' share of the proceeds, *e.g.*, that her share was paid in suspiciously small checks, payable from Maryland banks, and sent from Maryland. Such facts do not bear heavily on whether Doris knew that the vessel would be sold in Maryland *before it was sold in Maryland*. Moreover, they do not even bear heavily on whether Doris knew the vessel *was* sold in Maryland. That the buyer sent checks from a Maryland banks does not inexorably lead to the conclusion that the buyer lived in Maryland, worked in Maryland, or bought the vessel in Maryland.

The "constitutional reasonableness" factors outlined in *Burger King* weigh against exercising personal jurisdiction over Scott *and* Doris. Their contacts with Maryland are rather slight, but, as Plaintiff strenuously argues, without Scott's slight contacts there may have been no case at all. This leaves a close question on the propriety of exercising personal jurisdiction over Scott and Doris, one that the Court will decline to resolve.

   **b.** *Transfer*

In the end, even if the jurisdictional facts in this case are murky, the state of play is clear. In other words, after wading through the "fact-intensive morass of specific jurisdiction," *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 765 (Fed. Cir. 2016) (O'Malley, J., concurring), a simple truth remains: it just does not make sense to try this case in Maryland. Yes, a boat was (allegedly) sold in Maryland. Yes, it was (allegedly) sold to Maryland residents. And yes, that (alleged) sale will factor in the outcome of this case. But the actual, physical transaction is not, it seems, particularly important. What matters is *why* Scott sold the vessel, and how much Doris knew about his intentions. Scott lives in Florida. So does Doris.

In the event that the case is not dismissed, both Scott and Doris ask that the Court transfer this case to the Southern District of Florida, and in the interests of justice, the Court will do so. *See Lewis*, ___ F. Supp. 3d ___, 2018 WL 2321123, at *6 (transferring case even though court found it lacked personal jurisdiction over defendants). Florida appears to be the more convenient forum for litigation, and the parties will not have to proceed with the specter of an unenforceable judgment hanging over their heads; there is no dispute that Defendants are subject to personal jurisdiction in Florida. Therefore, pursuant to 28 U.S.C. § 1406(a), the Court will transfer the case to the Southern District of Florida.[4]

---

[4] It appears that both Defendants reside in the Southern District of Florida. *See* ECF No. 39-2 (Scott Gold's affidavit, in which he swore he is a resident of Florida, was sworn in Palm Beach County); ECF 1-4 (summons sent

**IV.** *Conclusion*

For the foregoing reasons, an Order shall enter transferring the case to the United States District Court for the Southern District of Florida.

DATED this 2nd day of July, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

to Doris Gold in Delray Beach, Florida). Even if they do not both reside in the Southern District, both have asserted, through argument and/or affidavit, that they are residents of Florida, and thus may be sued in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).